UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ROGER STEVEY,

        Plaintiff,

        v.

7-ELEVEN, INC., a Texas
corporation, formerly known
as The Southland Corporation,
SALINDER KAUR KANG, SATVINDER
SINGH KANG, dba 7-ELEVEN, and
DOES ONE through FIFTY,
inclusive,

        Defendants.

_____/

NO. CIV. S-08-2256 WBS CMK

MEMORANDUM AND ORDER RE:
MOTION AND CROSS-MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION TO EXCLUDE
EXPERT WITNESS AND STRIKE
DECLARATIONS

----oo0oo----

After unsuccessfully attempting to access the restroom at a 7-Eleven convenience store in Redding, California, plaintiff Roger Stevey initiated this action to enforce the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and corresponding state laws. Presently before the court are plaintiff's motion and defendants 7-Eleven, Inc., Salinder Kaur Kang, and Satvinder Singh Kang's cross-motion for summary

1

1  judgment and plaintiff's motion to exclude defendants' expert
2  witness and strike particular declarations that defendants
3  submitted.

4  I.   Factual and Procedural Background

5        At a lake in 1997, plaintiff overshot his landing when
6  performing a forward flip on a rope swing and suffered severe
7  physical injuries that resulted in paralysis.  (Singleton Decl.
8  Ex. A ("Stevey Dep.") 7:5-23.)  Since that time, plaintiff has
9  been a quadriplegic and required the assistance of a wheelchair.
10  (Id.)  On January 16, 2008, plaintiff spent the day at
11  Whiskeytown Lake with his wife and son and, on his way home that
12  evening, stopped at the 7-Eleven convenience store owned and
13  operated by defendants and located at 1860 Eureka Way in Redding,
14  California.  (Id. at 5:7-15, 6:3-7, 10:11-17; Compl. ¶ 5.)  The
15  7-Eleven is about 17.2 miles from plaintiff's home in Anderson,
16  California (Grabowski Decl. Ex. A), and is "one of the stores"
17  plaintiff stops at when driving to or from Whiskeytown Lake.
18  (Stevey Dep. 6:2-5.)  Prior to his visit in January 2008,
19  plaintiff's family had stopped at the 7-Eleven on one prior
20  occasion, but plaintiff remained in his van while a member of his
21  family went in the store to purchase beer and chips.  (Id. at.
22  11:4-7, 15:24-25, 16:1-6.)

23        Upon arriving at the 7-Eleven on the evening of January
24  16, 2008, plaintiff successfully maneuvered through the aisles in
25  the store to select some donuts and "junk food."  (Id. at 19-7-
26  16.)  After paying for his items, plaintiff asked the cashier for
27  the location of the restroom.  (Id. at 20:12-22.)  Plaintiff then
28  proceeded in the direction the cashier indicated and, after

2

1  entering a hallway and passing a door that appeared to give
2  access to a storage room, he found the bathroom door. (Id. at
3  22:1-6.)  Plaintiff was able to maneuver about a quarter of the
4  way into the single occupant restroom, but was prevented from
5  completely entering it or reaching the toilet because of "boxes
6  and toilet paper, metal cabinets, mops [and] every other thing"
7  that was stored in the bathroom. (Id. at 22:1-6, 23:20-24,
8  24:17-21.)  Plaintiff told the cashier that he could not use the
9  bathroom because of the "stuff . . . crammed up in" it, but the
10 cashier apparently did not say or do "much of anything." (Id. at
11 23:25-24:7, 25.)  Plaintiff indicates that he felt his "blood
12 pressure rising[ ] and throbbing in his neck," and he proceeded
13 to exit the store and relieve himself on the ground behind the 7-
14 Eleven. (Id. at 25:10-11, 30:19-24.)

15       Plaintiff has not returned to the 7-Eleven since the
16 visit giving rise to this suit, and he does not currently have
17 plans to go back to the store. (Id. at 33:18-34:2.)  At his
18 deposition, he testified that he "[m]ight go [to the 7-Eleven] in
19 the summertime" because he "stop[s] at whatever is on the way[ to
20 Whiskeytown Lake,] especially when [he is] in a hurry to go get
21 in the water when it's a hundred degrees." (Id. at 33:21-34:2.)

22       After his inability to access the restroom at the 7-
23 Eleven, plaintiff wrote a letter expressing his concern and
24 mailed it to 7-Eleven on three occasions, but did not receive a
25 response. (Id. at 40:4-9, 48:19-25.)  On August 25, 2008,
26 plaintiff initiated this action against defendants, seeking
27 injunctive relief under the ADA and injunctive relief and damages
28 pursuant to California Health and Safety Code section 19955,

3

1  California's Disabled Person's Act, Cal. Civ. Code §§ 54 <u>et</u> <u>seq.</u>,

2  and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 <u>et</u>

3  <u>seq.</u>

4        On April 1, 2009, plaintiff moved for summary judgment

5  and, on May 12, 2009, defendants opposed plaintiff's motion and

6  filed a cross-motion for summary judgment.  In their respective

7  motions for summary judgment, the parties dispute (1) whether

8  plaintiff has Article III standing; (2) whether plaintiff's

9  claims have been rendered moot by defendants' recent alterations

10  to the 7-Eleven; (3) whether the 7-Eleven is subject to the

11  "readily achievable" standard governing existing facilities or

12  the "maximum extent feasible" standard governing new or altered

13  facilities, <u>see generally</u> <u>Long v. Coast Resorts, Inc.</u>, 267 F.3d

14  918, 923 (9th Cir. 2001); and (4) whether the alterations

15  defendants have recently made to the 7-Eleven comply with the

16  applicable federal and state standards.  In response to evidence

17  defendants submitted, plaintiff also filed a motion to exclude

18  defendants' expert witness and strike the declarations of Neal

19  Casper and Olan Smith.[1]

20  II.  <u>Discussion</u>

21        Summary judgment is proper "if the pleadings, the

22  discovery and disclosure materials on file, and any affidavits

23  show that there is no genuine issue as to any material fact and

24

25        [1]   Defendants also raised three evidentiary objections to
    statements plaintiff made in his briefs and presumably the
26  evidence submitted in support of the statements.  The court need
    not address these objections because the statements in the briefs
27  are not evidence subject to objection and, because the court does
    not rely on any of the evidence supporting the statements, any
28  objections to the underlying evidence are moot.

4

that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A material fact is one that could affect
the outcome of the suit, and a genuine issue is one that could
permit a reasonable jury to enter a verdict in the non-moving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  The party moving for summary judgment bears the
initial burden of establishing the absence of a genuine issue of
material fact and can satisfy this burden by presenting evidence
that negates an essential element of the non-moving party's case.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
Alternatively, the moving party can demonstrate that the
non-moving party cannot produce evidence to support an essential
element upon which it will bear the burden of proof at trial.
Id.

Once the moving party meets its initial burden, the
non-moving party "may not rely merely on allegations or denials
in its own pleading," but must go beyond the pleadings and, "by
affidavits or as otherwise provided in [Rule 56,] set out
specific facts showing a genuine issue for trial."  Fed. R. Civ.
P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v.
Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  In its inquiry,
the court must view any inferences drawn from the underlying
facts in the light most favorable to the nonmoving party, but may
not engage in credibility determinations or weigh the evidence.
Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., Ltd. v.
Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When, as in this
case, parties submit cross-motions for summary judgment, the
court must "evaluate each motion separately, giving the nonmoving

party in each instance the benefit of all reasonable inferences." ACLU of Nev. v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003), cert. denied, 540 U.S. 1110 (2004); accord Fair Hous. Council v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

A.  Article III Standing

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life," including public accommodations. Id. at 675. Under Title III of the ADA, a plaintiff who has been discriminated against "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" may enforce the ADA through a private suit for an injunction and attorney's fees. 42 U.S.C. § 12182(a); see also Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA-- only injunctive relief is available for violations of Title III." (citing 42 U.S.C. § 12188(a)(1))).

Article III's limitation of federal court jurisdiction to "cases" or "controversies" requires that a plaintiff have standing to pursue the claims alleged. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). "The burden of establishing Article III standing remains at all times with the party invoking federal jurisdiction." Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 655 (9th Cir. 2002) (citing Lujan, 504 U.S. at 561)). To satisfy "the irreducible constitutional

minimum of standing," a plaintiff must establish three elements: (1) the plaintiff "suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the existence of a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (internal quotation marks and citations omitted). "The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)).

When a plaintiff seeks injunctive relief under the ADA, an injury is "actual or imminent" only if the plaintiff shows a "real and immediate" threat of future injury because of the likelihood that the plaintiff will return to the defendant's public accommodation. D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1036-37 (9th Cir. 2008); see City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Because the ADA does not require a plaintiff to engage in the "futile gesture" of continuing to visit a public accommodation with discriminatory conditions, an ADA plaintiff suffers an "actual injury" if the plaintiff "is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA." Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133,

7

1  1136-38 (9th Cir. 2002).

2            For example, the Ninth Circuit has "found actual or

3  imminent injury sufficient to establish standing where a

4  plaintiff demonstrates an intent to return to the geographic area

5  where the accommodation is located and a desire to visit the

6  accommodation if it were made accessible." D'Lil, 538 F.3d at

7  1036-37 (citing Pickern, 293 F.3d at 1138); see also Pickern, 293

8  F.3d at 1138 ("[A] plaintiff who is threatened with harm in the

9  future because of existing or imminently threatened

10  non-compliance with the ADA suffers 'imminent injury.'").  In

11  addition to considering the definitiveness of a plaintiff's

12  desire to return to the public accommodation at issue, courts in

13  this circuit have also examined (1) "the proximity of the place

14  of public accommodation to plaintiff's residence," (2)

15  "plaintiff's past patronage of defendant's business," and (3)

16  "plaintiff's frequency of travel near the business in question."

17  Jones v. Sears Roebuck & Co., No. 05-535, 2006 WL 3437905, at *2

18  (E.D. Cal. Nov. 29, 2006) (J., England).[2]

19  _____

20       [2]   Some district courts have considered the number of ADA
   claims a plaintiff has previously brought and whether the
21  plaintiff returned to the public accommodations at issue in those
   cases.  See, e.g., id. at *4.  In light of the ADA's limited
22  relief and "promise of equal access for the disabled," the Ninth
   Circuit has rejected a district court's adverse credibility
23  determination that was based on a plaintiff's history of ADA
   litigation, including the fact that the plaintiff did not return
24  to all of the public accommodations at issue in prior cases.
   D'Lil, 538 F.3d at 1040.  But see id. at 1042-42 (Rymer, J.,
25  dissenting) ("[T]o the extent that [plaintiff] represented in
   prior lawsuits that she intended to return to the place of
26  accommodation at issue in those cases in the reasonably near
   future, yet never has, the sincerity of a similar expression of
27  intent in this law suit [sic]--to return to [defendant's public
   accommodation] in the reasonably near future--is called into
28  question.").  Even if the court were to consider that factor

8

1    In many ADA cases, a plaintiff is able to establish an
2    actual or imminent injury by identifying specific plans to return
3    to the defendant's public accommodation.  In this case, however,
4    plaintiff answered "no" when asked, "Do you have any plans to go
5    back to [the 7-Eleven]?"  (Stevey Dep. 33:21-23.)  Plaintiff
6    contends, however, that he effectively changed his answer to this
7    question with an errata sheet on February 18, 2009.  The errata
8    sheet, which plaintiff submitted to the court only after
9    defendants filed their opposition to his motion for summary
10   judgment and their cross-motion for summary judgment, purports to
11   replace plaintiff's "no" response to defense counsel's question
12   about his future plans with the answer, "Yes, reason we would use
13   that store for convenience."  (Singleton Decl. Ex. D.)

14   Pursuant to Rule 30(e)(1), a deponent may make "changes
15   in form or substance" to a deposition by signing "a statement
16   listing the changes and the reasons for making them."  To make
17   changes pursuant to this rule, the party or deponent must request
18   review of the deposition "before the deposition is completed."
19   See Fed. R. Civ. P. 30(e)(1) ("On request by the deponent or a
20   party before the deposition is completed, the deponent must be
21   allowed 30 days after being notified by the officer that the
22   transcript or recording is available in which (A) to review the
23   transcript or recording; and (B) if there are changes in form or
24   substance, to sign a statement listing the changes and the
25   reasons for making them.") (emphasis added).  As the plain
26

27   here, the court notes that this is only the second ADA suit
28   plaintiff in this case has brought.  (Stevey Dep. 35:8-10.)  He
     could therefore hardly be considered to be a serial ADA litigant.

1  language of the rule provides, "requesting review is an 'absolute

2  prerequisite' for correcting a deposition under FRCP 30(e)."

3  Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d

4  1217, 1226 (9th Cir. 2005) (quoting Rios v. Bigler, 67 F.3d 1543,

5  1552 (10th Cir. 1995)); see also id. ("FRCP 30(e) [] requires the

6  deponent or the interested party to request review of the

7  deposition in order to make corrections.").

8          To memorialize whether a party or deponent requested

9  review before completion of the deposition, subsection (e)(2) of

10 Rule 30 requires the deposition officer to "note in the

11 certificate prescribed by Rule 30(f)(1) whether a review was

12 requested."  Fed. R. Civ. P. 30(e)(2).  See generally Evans v.

13 County of San Diego, No. 06-877, 2009 WL 306609, at *2 (S.D. Cal.

14 Feb. 4, 2009) (discussing the 1993 amendments to Rule 30(e),

15 which provided for review only if requested before completion of

16 the deposition).  In this case, the certification affixed to

17 plaintiff's deposition indicates that review was not requested

18 before completion of plaintiff's deposition, and plaintiff has

19 not submitted evidence to the contrary.  (Stevey Dep. 86:16-17.)

20         Courts have consistently adhered to the procedural

21 limitations established in Rule 30(e) and have excluded purported

22 changes to deposition transcripts when a party or deponent failed

23 to request review before completion of a deposition.  See McBride

24 v. Rivers, 170 Fed. App'x 648, 660-61 (11th Cir. 2006)

25 ("[Plaintiff's] deposition, however, does not reflect that, prior

26 to the completion of the deposition, he requested to review it. .

27 . . Thus, the court did not abuse its discretion in failing to

28 rule on [plaintiff's] motion to exclude his deposition testimony,

10

or in relying on this testimony in granting summary judgment."); Pacheco v. N.Y. Presbyterian Hosp., 593 F. Supp. 2d 599, 605 n.1 (S.D.N.Y. 2009) ("The failure of a party to request a copy of his own deposition transcript precludes his right to make changes to his transcript."); Agrizap, Inc. v. Woodstream Corp., 232 F.R.D. 491, 493 (E.D. Pa. 2006) ("Although courts are split over whether to allow substantive changes to a deposition, there is no debate that the procedural requirements of Rule 30(e) must be adhered to. 'Under the plain language of Rule 30(e) therefore, the deponent or party must request review of the deposition before its completion.'"); Blackthorne v. Posner, 883 F. Supp. 1443, 1454 (D. Or. 1995) (refusing to receive plaintiff's errata sheet as part of his deposition testimony because none of the deposition certificates indicated that plaintiff requested review before the depositions concluded); Gamez-Morales v. Pac. Nw. Renal Servs., L.L.C., No. 05-546, 2006 WL 2850476, at *5 (D. Or. Sept. 29, 2006) (refusing to adopt plaintiff's changes to her deposition when she requested review before leaving the location where the deposition was conducted but after the deposition had ended and opposing counsel had departed); Winston v. Marriott Int'l, Inc., No. 03-6321, 2006 WL 1229111, at *6 & n.2 (E.D.N.Y. May 8, 2006) ("Numerous courts have rejected changes to depositions when the procedural requirements of Rule 30(e) were not met."); accord McCoy v. Spidle, No. 07-198, 2009 WL 1287872, at *10 (E.D. Cal. May 6, 2009) (Bury, J.).

As is often the case with procedural requirements, extraordinary circumstances in a particular case may merit departure from strict compliance with Rule 30(e). See, e.g.,

11

1  Hambleton Bros. Lumber Co., 397 F.3d at 1224 ("Missing [Rule

2  30(e)(1)'s] thirty day deadline by a mere day or two might not

3  alone justify excluding the corrections in every case."); Gardias

4  v. San Jose State Univ., No. 04-4086, 2007 WL 1655586, at *3

5  (N.D. Cal. June 7, 2007) (exempting a pro se plaintiff from the

6  review requirement after the plaintiff claimed he was

7  hyperventilating during his deposition and filed a motion to

8  invalidate his deposition less than thirty days after his

9  deposition).  In this case, however, plaintiff has not

10  identified--and the record does not reveal--any circumstances

11  excusing plaintiff's failure to comply with Rule 30(e)(1).

12         To the contrary, the change plaintiff seeks to make

13  with his errata sheet is precisely the type of change the Ninth

14  Circuit has more recently excluded from Rule 30(e).  See

15  Hambleton Bros. Lumber Co., 397 F.3d at 1225-26.  In Hambleton,

16  the Ninth Circuit aligned with the Seventh and Tenth Circuits'

17  conclusion that "Rule 30(e) is to be used for corrective, and not

18  contradictory, changes."  Id. at 1226.  Analogizing to its "sham"

19  affidavit line of cases, the Ninth Circuit explained that even

20  though "the language of FRCP 30(e) permits corrections 'in form

21  or substance,' this permission does not properly include changes

22  offered solely to create a material factual dispute in a tactical

23  attempt to evade an unfavorable summary judgment."  Id. at 1225.[3]

24

25         [3]    There is currently a split of authority among circuits
    about whether contradictory changes come within the scope of Rule
26  30(e).  See generally Agrizap, Inc., 232 F.R.D. at 493 n.2
    (discussing the circuit split).  The Rules Committee has received
27  the suggestion of clarifying whether Rule 30(e) allows a deponent
    to make "unlimited changes or only correct typographical errors."
28  Advisory Committee on Civil Rules, Civil Rules Suggestions Docket

1    Although the court need not determine whether
2    plaintiff's change would be precluded under <u>Hambleton</u> if he had
3    in fact requested review, plaintiff's attempt to replace his
4    deposition testimony with a completely conflicting answer less
5    than two months before moving for summary judgment and only in
6    response to defendants' opposition and cross-motion for summary
7    judgment presents far from the type of extraordinary
8    circumstances that might excuse compliance with Rule 30(e).
9    Plaintiff's failure to request review of his deposition before
10   its conclusion thus precludes him from altering his deposition
11   testimony, and the court will therefore disregard the errata
12   sheet he submitted.[4]  Accordingly, the evidence before the court
13   is that plaintiff did not have plans to return to the 7-Eleven at
14   the time he filed his Complaint.  <u>See</u> <u>Wilbur v. Locke</u>, 423 F.3d
15   1101, 1107 (9th Cir. 2005) (standing is determined as of the date
16   of the filing of the complaint).

17

18   (Historical), at 16, <u>available at</u> http://www.uscourts.gov/rules/
     Civil_Docket.pdf.  The suggestion was referred to the reporter
19   and chair and is listed as pending further action.  <u>Id.</u>

20       [4]  Plaintiff also attempts to rely on allegations in his
     Complaint that he intends to return to the 7-Eleven once it is
21   made accessible.  (Reply 7:9-24, 8:11-16.)  These allegations are
     clearly insufficient to satisfy plaintiff's burden at summary
22   judgment.  <u>See</u> <u>Williams v. Boeing Co.</u>, 517 F.3d 1120, 1128 (9th
     Cir. 2008) ("On a summary judgment motion challenging standing a
23   plaintiff may not rest on 'mere allegations, but must set forth
     by affidavit or other evidence specific facts' that demonstrate
24   standing.").
         In response to defendants' Requests for Admission,
25   plaintiff also stated that he "is likely to return to [the 7-
     Eleven] in the future when he and his family travel to
26   Whiskeytown Lake." (Wegner Decl. Ex. A at 2:18-23.)  Plaintiff
     does not request the court to consider this statement when ruling
27   on the motion and cross-motion for summary judgment, and the
     court agrees that plaintiff could not rely on this statement to
28   establish standing.

                                   13

Nonetheless, plaintiff's lack of plans to return to the 7-Eleven does not necessarily prevent him from establishing Article III standing.  Courts have recognized that, given the nature of certain public accommodations, it would be disingenuous to require a plaintiff to identify specific plans to return: "Visiting a fast food restaurant, as opposed to a hotel or professional office, is not the sort of event that requires advance planning or the need for a reservation. . . . Therefore, . . . [requiring] specification as to a date and time of returning to this public accommodation is impossible . . . ." Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000); accord Jones, 2006 WL 3437905, at *4.  Similar to a fast food restaurant, individuals rarely make concrete "plans" to visit a convenience store, and it would be artificial for courts to demand as much under Article III.

Taking all inferences in favor of plaintiff, it is therefore possible that plaintiff thought defense counsel was asking whether he had concrete plans to return to the 7-Eleven on a specific date in the future.  This inference is supported by the fact that, immediately after he answered "no"--and without additional questioning by counsel--plaintiff speculated about when he "might" return to the 7-Eleven: "Might go there in the summertime, you know, got a carload of people, going to stop for some drinks or something, you know, you stop at whatever is on the way especially when you're in a hurry to go get in the water when it's a hundred degrees."  (Stevey Dep. 33:23-34:2.) Plaintiff's lack of specific plans is therefore insufficient in itself to deprive him of Article III standing.

14

1      Reasonable inferences drawn from this testimony and

2  other relevant evidence give rise to disputed factual issues

3  sufficient for plaintiff to withstand summary judgment.  First,

4  it is undisputed that the 7-Eleven is approximately 17.2 miles

5  from plaintiff's residence in Anderson, California.  (Grabowski

6  Decl. Ex. A.)  Compared to other cases in which the Ninth Circuit

7  has found standing, the proximity of the 7-Eleven to plaintiff's

8  home in this case is extremely close.   See D'Lil, 538 F.3d at

9  1034 (finding standing where public accommodation was in Santa

10  Barbara, California, and plaintiff's home was in Sacramento,

11  California); Doran, 524 F.3d at 1038 (finding standing where

12  pubic accommodation was approximately 550 miles from plaintiff's

13  home); Pickern, 293 F.3d at 1135 (finding standing where pubic

14  accommodation was approximately 70 miles from plaintiff's home).

15  Second, plaintiff testified that the 7-Eleven is "one of the

16  stores on the way" to and from Whiskeytown Lake and that he uses

17  the store based on its convenient location on such trips.

18  (Stevey Dep. 6:2-5; 33:25-34:2.)  Third, plaintiff testified that

19  he intends to return to Whiskeytown Lake this summer.[5]  (See id.

20  at 6:3-5, 14:22-25, 33:23-34:2.)

21      Given the close proximity of the 7-Eleven to

22  plaintiff's home, that he always stops on his way to and from

23  Whiskeytown Lake, that the 7-Eleven is one of the stores he stops

24  at, and that he intends to return to Whiskeytown Lake, it is

25

26      [5]   In his briefs, plaintiff's counsel repeatedly
   represents that plaintiff frequently travels to Whiskeytown Lake;
27  however, the evidence identified in plaintiff's briefs to support
   this statement and the record before the court are silent on that
28  issue.

15

1  reasonable to infer that plaintiff is likely to return to the 7-
2  Eleven in the future.  Accordingly, the court must deny
3  defendants' cross-motion for summary judgment with respect to
4  plaintiff's standing under Article III.

5          Although plaintiff's testimony is sufficient to
6  withstand summary judgment, plaintiff fails to carry his burden
7  of establishing the absence of a genuine issue of material fact
8  on that issue.  When inferences from the same facts are taken in
9  favor of defendants, it is also reasonable to infer that it is
10 unlikely plaintiff will return to the 7-Eleven.  For example, if
11 plaintiff always stops on his trips to and from Whiskeytown Lake
12 (id. at 11:2-3), but has been to the 7-Eleven on only two prior
13 occasions, it is reasonable to infer that he rarely goes to
14 Whiskeytown Lake or rarely chooses to stop at the 7-Eleven when
15 he does.  See, e.g., Jones, 2006 WL 3437905, at *1, *3 (finding
16 ADA plaintiff lacked standing based, in part, on the fact that
17 she had been to the Sears at issue twice in seventeen years and
18 occasionally shopped at other Sears locations); see also Molski
19 v. Mandarin Touch Rest., 385 F. Supp. 2d 1042, 1045 (C.D. Cal.
20 2005) ("Where a plaintiff has visited a restaurant only once, the
21 lack of a 'history of past patronage seems to negate the
22 possibility of future injury at [that] particular location.'"
23 (quoting Parr, 96 F. Supp. 2d at 1079)) (alteration in original).
24 Accordingly, because plaintiff has failed to establish the
25 absence of a genuine issue of material fact, the court must also
26 deny plaintiff's motion for summary judgment with respect to his
27 standing under Article III.

28          As the leading Ninth Circuit cases on ADA standing

illustrate, Article III does not place an onerous burden on ADA

plaintiffs.  Although plaintiff failed to carry his burden of

establishing standing as a matter of law, the "'broad view of

constitutional standing'" applicable to ADA claims, Doran, 524

F.3d at 1039-40, allows him to withstand summary judgment with

the minimal evidence before the court.  Indeed, the lesson to be

learned from Doran, Pickern, and D'Lil is that it would take a

rare set of facts before the standing requirements under Article

III could deprive an ADA plaintiff of his day in court.[6]

    B.  Mootness and Plaintiff's Motion to Exclude Evidence

    A case is rendered moot and jurisdiction over the

matter thereby abates when "'the issues presented are no longer

"live" or the parties lack a legally cognizable interest in the

---

[6]  At oral argument, defendants could not cite a single
Ninth Circuit case concluding that an ADA plaintiff lacked
standing.  This court has found only two published decisions in
which the Ninth Circuit held that a plaintiff seeking relief
under Title III of the ADA did not have standing.  See Bird v.
Lewis & Clark Coll., 303 F.3d 1015, 1019-20 (9th Cir. 2002)
(concluding that plaintiff "cannot demonstrate a real or
immediate threat that the College will again subject her to
discrimination[ because s]he has since graduated from the
College, and has not alleged that she plans to return as a
student or participate in the overseas programs"); Lee, 107 F.3d
at 1388-90 (concluding that plaintiff lacked standing under the
ADA to attack Oregon's Death With Dignity Act because the
possibility that plaintiff would unwillingly end her life with
the aid of the state statute relied on a "chain of speculative
contingencies"); see also Walsh v. Nev. Dep't of Human Res., 471
F.3d 1033, 1037 (9th Cir. 2006) (holding that plaintiff did not
satisfy the redressability prong of standing to assert a claim
under Title I of the ADA); McLean v. City of Big Bear Lake, 270
Fed. App'x 498, 498 (9th Cir. 2008) (holding that plaintiff
lacked standing under Title III of the ADA because he "alleges
only the hypothetical scenario that a third-party may bring suit
against [defendant] under the [ADA]").  The court is also aware
of only three unpublished decisions before January 1, 2007 in
which the Ninth Circuit held that an ADA plaintiff lacked Article
III standing.  See Ninth Circuit Rule 36-3(c) (prohibiting, with
limited exceptions, citation to unpublished decisions issued
before January 1, 2007).

1   outcome.'" <u>Los Angeles County v. Davis</u>, 440 U.S. 625, 631 (1979)

2   (quoting <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969)).   While

3   voluntary cessation of allegedly illegal conduct generally does

4   not render a case moot, "a case may become moot if (1) it can be

5   said with assurance that there is no reasonable expectation that

6   the alleged violation will recur, and (2) interim relief or

7   events have completely and irrevocably eradicated the effects of

8   the alleged violation." <u>Lindquist v. Idaho State Bd. of Corr.</u>,

9   776 F.2d 851, 854 (9th Cir. 1985) (internal citations, quotation

10  marks, and alteration omitted).   In arguing that its conduct has

11  rendered plaintiff's claim moot, a defendant has the "heavy

12  burden" of showing that the "likelihood of further violations is

13  sufficiently remote to make injunctive relief unnecessary."

14  <u>United States v. Concentrated Phosphate Export Ass'n</u>, 393 U.S.

15  199, 203 (1968).

16          Because a private ADA plaintiff is limited to seeking

17  injunctive relief and attorney's fees, <u>Wander v. Kaus</u>, 304 F.3d

18  856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)), a

19  plaintiff's ADA claim is moot if the defendant makes the precise

20  alterations or accommodations that the plaintiff sought to

21  require with an injunction.   <u>See, e.g.</u>, <u>Tandy v. City of Wichita</u>,

22  380 F.3d 1277, 1291 (10th Cir. 2004); <u>Bleakly v. Sierra Cinemas,</u>

23  <u>Inc.</u>, No. 07-052, 2008 WL 109337, at *1 (E.D. Cal. Jan. 8, 2008)

24  (Shubb, J.); <u>Grove v. De La Cruz</u>, 407 F. Supp. 2d 1126, 1130-31

25  (S.D. Cal. 2005); <u>Parr v. L & L Drive-Inn Rest.</u>, 96 F. Supp. 2d

26  1065, 1087 (D. Haw. 2000); <u>Indep. Living Res. v. Or. Arena Corp.</u>,

27  982 F. Supp. 698, 771 (D. Or. 1997).

28          To establish that plaintiff's ADA claims are moot,

18

defendants have submitted a rebuttal report by their expert, Neal
Casper, that itemizes the specific violations plaintiff
identifies and indicates that 7-Eleven has made the necessary
alterations to bring each violation into compliance with the ADA.
Plaintiff, however, moves to exclude Casper's rebuttal report and
supporting declaration pursuant to Federal Rule of Civil
Procedure 37(c)(1) because defendants failed to disclose his
report by the deadline established in the court's Status
(Pretrial Scheduling) Order.  Plaintiff similarly moves to
exclude[7] the declaration of Olan Smith, which also addresses the
recent alterations made to the 7-Eleven, because defendants did
not disclose Smith as a potential witness pursuant to Rule
26(a)(1)(A)(i).  If the court does not grant his motion to
exclude the aforementioned evidence, plaintiff alternatively
requests time to conduct a second inspection of the 7-Eleven, as
he did not receive Casper's declaration and rebuttal report or
Smith's declaration until after discovery had closed.

"Federal Rule of Civil Procedure 26(a)(2)(B) requires
the parties to disclose the identity of each expert witness
'accompanied by a written report prepared and signed by the
witness.'"  <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259
F.3d 1101, 1106 (9th Cir. 2001).  Rule 26(e)(2) also imposes a

---

[7]     With respect to the declarations of Casper and Smith,
plaintiff characterizes his motion as one to strike the
declarations.  Courts interchangeably refer to a motion under
Rule 37(c)(1) as one to strike or to exclude evidence.  <u>Compare,
e.g.</u>, <u>Wertz v. Target Corp.</u>, No. 08-78, 2009 WL 635655 (E.D. Cal.
Mar. 10, 2009), <u>with</u> <u>Hagan v. Cal. Forensic Med. Group</u>, No. 07-
1095, 2009 WL 689740 (E.D. Cal. Mar. 5, 2009).  The court will
simply refer to plaintiff's motion as one to exclude all of the
aforementioned evidence.

duty on parties to supplement expert disclosures at the time the parties make their pretrial disclosures.  While subsection (a)(2)(C) of Rule 26 provides default deadlines, it also expressly provides for a court order to supplant those deadlines. Here, the court's Status (Pretrial Scheduling) Order issued on January 22, 2009, provided, "The parties shall disclose any experts and produce reports in accordance with Federal Rule of Civil Procedure 26(a)(2) by no later than March 26, 2009," and "with regard to expert testimony intended solely for rebuttal, those experts shall be disclosed and reports produced in accordance with Federal Rule of Civil Procedure 26(a)(2) on or before April 16, 2009." (Docket No. 9.)  The Status (Pretrial Scheduling) Order also provided that all discovery must be completed by May 4, 2009, all dispositive motions must be filed by June 22, 2009, the pretrial conference would be held on August 24, 2009, and the trial would begin on October 27, 2009. (_Id._)

          Plaintiff timely disclosed his expert and expert report on March 13, 2009. (Singleton Decl. ¶ 9, Ex. G.)  On April 16, 2009--the deadline to disclose any rebuttal experts and their reports--defendants disclosed that they had "retained and intend to rely on the expert testimony of" Casper. (_Id._ Ex. E.)  In that disclosure, defendants provided the contact information for Casper, his resume, and explained that he "is expected to testify regarding" defendants' "compliance with federal and state disability access laws," "whether any of the alleged barriers Plaintiff encountered interfered with his ability to access goods and services," "whether any of the alleged barriers would have deterred Plaintiff from accessing the location in question,"

"whether the 'readily achievable' standard applies for barrier removal," and "whether removal of any of the alleged barrier[s] may be readily achievable." (Id.)  Defendants did not, however, disclose Casper's report to plaintiff's until they filed it with their opposition to plaintiff's motion for summary judgment and their cross-motion for summary judgment on May 12, 2009. Defendants' April 16, 2009 disclosures also failed to state that Casper would testify about defendants' recent alterations to the 7-Eleven.

    With respect to the declaration of Smith, Rule 26(a)(1)(A)(i) requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Rule 26(e)(1) also requires a party to "supplement or correct its disclosure or response[ ] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  In this case, defendants neither disclosed the existence of Smith in their initial disclosures nor supplemented those disclosures to include him.  (Singleton Decl. Ex. F.)

    The Federal Rules of Civil Procedure and efficient case management require courts to "set schedules and establish deadlines to foster the efficient treatment and resolution of cases."  Wong v. Regents of Univ. of Cal., 410 F.3d 1052, 1060

(9th Cir. 2005); <u>see</u> Fed. R. Civ. P. 16(f).  "Those efforts will
be successful only if the deadlines are taken seriously by the
parties, and the best way to encourage that is to enforce the
deadlines."  <u>Wong</u>, 410 F.3d at 1060.  Rules 16(f) and 37(c)(1)
therefore provide courts with the means to enforce scheduling
deadlines.  <u>Id.</u> at 1060, 1062.  Rule 16(f) provides that, "[o]n
motion or on its own, the court may issue any just orders,
including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a
party or its attorney: . . . (C) fails to obey a scheduling or
other pretrial order."  Rule 37(c)(1) deals more directly with
expert and witness disclosures and "gives teeth" to Rule 26(a)
and (e).  <u>Yeti by Molly, Ltd.</u>, 259 F.3d at 1106.

Specifically, Rule 37(c)(1) provides:

> If a party fails to provide information or identify a
> witness as required by Rule 26(a) or (e), the party is
> not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless
> the failure was substantially justified or is harmless.

Pursuant to this rule, defendants may not use Casper's
declaration or rebuttal report, Smith's declaration, or the
information in those documents unless they show that their
failures to comply with Rule 26 were "substantially justified" or
are "harmless."  <u>See Yeti by Molly, Ltd.</u>, 259 F.3d at 1106-07
(identifying the two express exceptions and providing that the
burden is on the party facing sanctions to establish one of the
two exceptions).

Defendants appear to argue that their failure to
disclose Casper's rebuttal report was "substantially justified"
because "it became apparent to Defendants that it would be
prudent to retain a rebuttal expert to challenge the findings of

22

Plaintiff's expert" only "[a]fter plaintiff filed his motion for
summary adjudication." (Defs.' Opp'n to Pl.'s Mot. to Strike
4:17-19.) Plaintiff's expert report, however, was available to
defendants on March 13, 2009, and defendants should have
considered the potential relevance of the evidence without
waiting for plaintiff to file a motion for summary judgment.
Moreover, defendants apparent dissatisfaction with the deadlines
set by the court is insufficient to justify ignoring the court's
scheduling order, especially when defendants could have disclosed
a preliminary report by Casper or moved for an extension of time.
See Yeti by Molly, Ltd., 259 F.3d at 1106. With respect to
Smith's declaration, defendants explained that Smith is the
successor to a 7-Eleven employee listed in their initial
disclosures, but do not identify any reasons substantially
justifying their failure to supplement that disclosure to include
Smith.

Defendants' argument that plaintiff's ADA claims are
now moot given their recent alterations to the 7-Eleven
illustrates the prejudice plaintiff might suffer if the court
considers Casper's declaration and rebuttal report and Smith's
declaration at this time. First, when identifying the subject
areas about which Casper was expected to testify, defendants did
not mention that he would testify about recent alterations
defendants made to allegedly bring the store into compliance. It
is therefore doubtful that plaintiff was aware that the
conditions at the 7-Eleven were any different from when
plaintiff's expert inspected the property. Second, defendants
disclosed Casper's rebuttal report--which appears to have

identified the recent alterations for the first time--only after

discovery had closed.  Smith's declaration, although less

detailed, similarly offers evidence about these alterations.  If

the discovery deadline is upheld and defendants' evidence

considered, plaintiff could thus be prevented from inspecting the

property and rebutting Casper and Smith's representations about

the recent alterations.

Nonetheless, as the parties' pretrial conference and

trial date are set for August 24, 2009, and October 27, 2009,

respectively, the prejudice plaintiff could suffer by the court's

consideration of Casper's declaration and rebuttal report and

Smith's declaration can be prevented.  Indeed, Rule 56(f)

contemplates a remedy for such circumstances:

> If a party opposing the motion shows by affidavit that,
> for specified reasons, it cannot present facts essential
> to justify its opposition, the court may: (1) deny the
> motion; (2) order a continuance to enable affidavits to
> be obtained, depositions to be taken, or other discovery
> to be undertaken; or (3) issue any other just order.

The court will therefore re-open discovery to allow plaintiff to

depose Casper and allow his own expert to perform an inspection

of the property.[8]  Plaintiff may then file any supplemental

evidence and supporting brief on or before July 20, 2009.

Defendants may submit any reply to plaintiff's brief on or before

July 27, 2009.  The court will keep the remaining issues raised

in the pending motion and cross-motion for summary judgment under

submission and issue an order after the aforementioned briefing

schedule and without the need for additional oral argument.

---

[8]   The parties have stipulated that plaintiff may take
Casper's deposition on July 6, 2009.  (Wegner Decl. Ex. 3.)

24

1    Although the court concludes that the harsh sanction of

2  excluding Casper's declaration and rebuttal report and Smith's

3  declaration is not required in this case, <u>cf.</u> <u>Yeti by Molly,</u>

4  <u>Ltd.</u>, 259 F.3d at 1105-07 (upholding exclusion of an expert

5  witness when the report was disclosed "almost two years after the

6  close of discovery, more than one year after [the expert's]

7  report was last supplemented, and just 28 days prior to trial"),

8  defendants' failure to comply with or seek extensions of the

9  clear deadlines should not be rewarded.  As the Ninth Circuit has

10  recognized, "[p]arties must understand that they will pay a price

11  for failure to comply strictly with scheduling and other orders,

12  and that failure to do so may properly support severe sanctions

13  and exclusions of evidence." <u>Wong</u>, 410 F.3d at 1060.  Rule

14  37(c)(1) also provides for sanctions separate from exclusion of

15  evidence:

16         In addition to or instead of this sanction, the court, on
       motion and after giving an opportunity to be heard: (A)
17       may order payment of the reasonable expenses, including
       attorney's fees, caused by the failure; (B) may inform
18       the jury of the party's failure; and (C) may impose other
       appropriate sanctions, including any of the orders listed
19       in Rule 37(b)(2)(A)(i)-(vi).[9]

20

21       [9]    The sanctions provided in Rule 37(b)(2)(A) include:

22     (i) directing that the matters embraced in the order or
       other designated facts be taken as established for
23     purposes of the action, as the prevailing party claims;
       (ii) prohibiting the disobedient party from supporting or
24     opposing designated claims or defenses, or from
       introducing designated matters in evidence; (iii)
25     striking pleadings in whole or in part; (iv) staying
       further proceedings until the order is obeyed; (v)
26     dismissing the action or proceeding in whole or in part;
       (vi) rendering a default judgment against the disobedient
27     party; or (vii) treating as contempt of court the failure
       to obey any order except an order to submit to a physical
28     or mental examination.

1       Defendants' failure to timely disclose Casper's expert

2 report has undoubtedly increased plaintiff's attorney's fees and

3 costs, including the costs associated with plaintiff's pending

4 motion to exclude Casper's declaration and rebuttal report and

5 Smith's declaration.  Upon a proper motion itemizing the

6 requested amount, the court will therefore grant plaintiff the

7 reasonable expenses, including attorney's fees, that defendants'

8 failures to comply with Rule 26(a) have caused.

9       IT IS THEREFORE ORDERED that plaintiff's motion and

10 defendants' cross-motion for summary judgment with respect to

11 plaintiff's standing under Article III be, and the same hereby

12 are, DENIED; plaintiff's motion to exclude defendants' expert

13 witness and strike defendants' declarations be, and the same

14 hereby is, DENIED upon the conditions set forth in this Order;

15 and the remaining issues raised in plaintiff's motion and

16 defendants' cross-motion for summary judgment will be taken under

17 submission.

18 DATED:  June 25, 2009

19

20                  _____

21                  WILLIAM B. SHUBB

                    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

26